## LATUREN v. BOLTON DRUG CO., Limited.

### (Supreme Court, Trial Term, Kings County. May, 1905.)

1. DRUGGISTS—NEGLIGENCE IN FILLING · PRESCRIPTION—EVIDENCE.

   A prescription given by a physician to his patient called for "Elixir Pinus Comp. cum Heroin—ounces 4." The druggist had a bottle of "Elixir Pinus Compositus" and a bottle of Heroin, and, on consulting a pamphlet issued by the maker of the Heroin and the Elixir Pinus Compositus, he found that such manufacturer also put up a compound known as "Elixir Pinus Compositus with Heroin," and the formula in the pamphlet showed that the proportion of Heroin in the Elixir Pinus Com-

positus with Heroin was $1/24$ of a grain per drachm, whereupon, in filling the prescription, he added $1/24$ of a grain of Heroin to each drachm of Elixir Pinus Compositus. *Held*, that the pharmacist was not negligent in so compounding the prescription.

2. SAME—POISON—JUDICIAL NOTICE.

Judicial notice will be taken of the fact that one-tenth of a grain of morphine, taken every four hours, could not have a poisonous effect.

Action by Emma F. Laturen against the Bolton Drug Company, Limited, for damages for alleged negligence in filling a physician's prescription, by which the plaintiff claims to have been poisoned with morphine.

Motion for a new trial on the minutes, the court having dismissed the action on the evidence produced by the plaintiff. Denied.

Edmund F. Driggs, for plaintiff.
Charles C. Nadal, for defendant.

GAYNOR, J. The charge in the complaint against the defendant is negligence by its pharmacist in filling a prescription of Dr. Cruikshank for the plaintiff, by which she was poisoned by an overdose of morphine or opium, as is claimed.

The prescription was in the following words, viz.:

"Elixir Pinus Comp. cum Heroin—ounces 4—Merrills. One teaspoonful in water every four hours."

The pharmacist saw that it only called for a patent medicine put up and sold in bottles by Merrell (at Cincinnati). It did not call for an original bottle of the medicine, but for a smaller quantity in a four-ounce vial.

There was a bottle in stock, the printed label thereon bearing the name, "Elixir Pinus Compositus," which the prescription called for, and that being the name under which the medicine was advertised and sold. But the pharmacist saw that the doctor's prescription had, after the name of the said elixir (as we have seen), the additional two words, "cum Heroin," which is Latin for "with" Heroin.

These two words were not on the label of the bottle. The pharmacist therefore looked into the pamphlet advertisement of Merrell's patent medicines, which he had in the store, and found that Merrell also put up the said "Elixir Pinus Compositus" in the same bottles with the same name on the label, but with the additional two words under it on the label, "with Heroin," not "cum Heroin."

The formula given by the pamphlet also showed that the amount or proportion of Heroin was $1/24$ of a grain to the drachm or teaspoonful dose. The pharmacist therefore in order to fill the requirement of the words "cum Heroin" in the doctor's prescription, added the said $1/24$ of a grain of Heroin to the dose, and thereby literally filled the prescription, which, as we have seen, called for "Elixir Pinus Comp.," with the added two words "cum Heroin" (with Heroin).

There was plainly no negligence in this. The prescription was none too careful; it did not even correctly follow the words of the label of the patent medicine bottle it was to be filled from; but it was intelligently read and filled.

It is claimed, however, that there was a negligent oversight by the pharmacist, in that he let in one ingredient too many.

The pharmacist properly added $1/24$ of a grain of Heroin for each dose, but it is claimed that he negligently left in $1/16$ of a grain of morphine acetate for each dose.

And that came about as follows:

By the formula printed on the bottle label the said "Elixir Pinus Compositus" is shown to consist of nine separate drugs in certain proportions, the seventh being the said "morphine acetate, $1/16$ gr."

By the formula printed on the label of the bottle of the other mixture, i. e., of the said "Elixir Pinus Compositus, with Heroin," it is shown to consist also of nine separate drugs in certain proportions. They are the very same as those on the label of the bottle of the "Elixir Pinus Compositus," except that the seventh, morphine acetate ($1/16$ gr.), is omitted and Heroin ($1/24$ gr.) is substituted in its place.

The pharmacist, however, added the $1/24$ grain of Heroin the dose to the bottled "Elixir Pinus Compositus," which contained the $1/16$ grain of morphine acetate to the dose, as we have seen; whereas if the prescription had been filled from a bottle labelled "Elixir Pinus Compositus, with Heroin," the $1/16$ grain of morphine acetate would not have been in it, as it is omitted from that bottle, as we have seen.

The question therefore arose whether if it be conceded that this was a negligent oversight by the pharmacist, the plaintiff could have been poisoned by it.

Heroin is a preparation of morphine, as is also morphine acetate; so that the two together in the prescription made more morphine to the dose than if the $1/24$ of a grain of heroin only had been in it.

But the uncontradicted evidence in the case is that both combined would make only $1/10$ of a grain of morphine to the dose.

And there was no evidence whatever in the case that $1/10$ of a grain of morphine in a dose taken every four hours could cause morphine poisoning. On the contrary, the uncontradicted evidence is that it could not do so, but that $\frac{1}{5}$ of a grain increased to $\frac{1}{4}$ of a grain every hour would be usual and entirely safe; whereas the plaintiff's dose was only $1/10$ of a grain every four hours, and she took only four doses. When we consider that morphine is not a cumulative poison, but that no effects of a dose of $1/10$ of a grain or even of a much larger dose, would remain in four hours after it was taken, we perceive the entire lack of foundation to the claim put forward for this plaintiff that she was poisoned by morphine.

On this state of the evidence, it did not seem to me that there was any evidence on which the jury could be permitted to find that the plaintiff was poisoned by an overdose of morphine, and I therefore dismissed the case. It was not for the jury to guess; the fact had to be proved. I would now grant a new trial and send the case to a jury did I not remain of the same opinion. Moreover, I believe that a court may take judicial notice of the scientific fact that $1/10$ of a grain of morphine taken every four hours could not have poisoned the plaintiff.

It is very evident that the names on the two bottles are, taken together, very misleading. The name "Elixir Pinus Compositus with Heroin" is obviously wrong, for the contents of the bottle are in fact "Elixir Pinus Compositus" not merely "with" Heroin, but also "without" morphine acetate. For this reason the doctor's prescription was negligent. It should have unmistakably distinguished between the two bottles since the names on their labels did not.

My attention is called to the fact that the doctor has published in a medical journal and otherwise the false and invented statement that it was decided in this case that a pharmacist may change a doctor's prescription, or substitute some other medicine than that it calls for, without liability. I regret to feel obliged to say that he is so well known in our courts, where he has been for many years connected with litigations of an unsavory character, to say the least, that no notice needs to be taken of his false statement so far as the legal profession is concerned, and I understand that to be so of the medical profession also. But lest any drug clerk may be misled by such false statement to the danger of others, it seems proper that I say that not only was no such thing said or decided, but it was not presented or even mooted. Where would counsel be found to present and argue such an absurd proposition?

The motion is denied.